26 F.3d 131
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
James M. JOHNSON, Petitioner-Appellant,
v.
William DUNCAN, Warden; Attorney General of California,
Respondents-Appellees.
 No. 93-56329.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 24, 1994.*
Decided May 27, 1994.
 
 Before: HUG, D.W. NELSON, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 James Johnson appeals pro se the district court's denial of his petition for writ of habeas corpus. Johnson contends, first, that the evidence was insufficient to support his conviction of second-degree murder and, second, that the admission of prior testimony violated his Sixth Amendment rights. We have jurisdiction under 28 U.S.C. Sec. 2253, and we affirm.
 
 
 3
 We review de novo the district court's denial of a petition for writ of habeas corpus. Taylor v. Kincheloe, 920 F.2d 599, 601 (9th Cir.1990).
 
 
 4
 * Facts
 
 
 5
 Johnson was in a fight involving eight or nine young men outside of Banning High School on April 23, 1981. Witnesses at Johnson's bench trial testified that when Leroy Irvin, an unarmed school employee, tried to break up the fight, Johnson swung at him with what appeared to be a knife, inflicting a bleeding wound near his shoulder. Johnson then turned and fled. Irvin pursued him some hundred feet before Johnson turned and swung again, cutting Irvin across the stomach. Irvin fell to the ground on his back and did not move again.
 
 
 6
 Several defense witnesses, all of whom conceded they were friends of the defendant, testified that Irvin, who was taller and stronger than Johnson, punched him repeatedly in the face and head in the course of breaking up the fight. Photographs of Johnson taken within hours of the incident, however, revealed no cuts, bruises or swelling.
 
 
 7
 Johnson's original trial resulted in a conviction of first-degree murder, but he was granted a new trial on the ground that his counsel was ineffective. A second trial resulted in a hung jury. Following a third trial before a state court judge, Johnson was convicted of second-degree murder, and sentenced to 16 years to life in prison.
 
 II
 Sufficiency
 
 8
 Johnson argues that the evidence does not support his conviction because he was privileged to defend himself with lethal force against Irvin's assault.
 
 
 9
 In evaluating the sufficiency of the evidence, we review the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. United States v. Marashi, 913 F.2d 724, 735 (9th Cir.1990). "[T]he evidence need not exclude every hypothesis except that of guilt. The issue merely is whether the trier of fact could reasonably arrive at its conclusion." United States v. Lester, 749 F.2d 1288, 1296 (9th Cir.1984). "An assault with a deadly weapon made in a manner to endanger life and resulting in death is sufficient to sustain a conviction of second degree murder, as the requisite malice is implied from the assault." People v. Pacheco, 172 Cal.Rptr. 269, 273 (Ct.App.1981). The evidence amply supported the conviction of second-degree murder. See Pacheco, 172 Cal.Rptr. at 273.
 
 III
 Sixth Amendment
 
 10
 The Sixth Amendment entitles a defendant to confront witnesses against him. Hearsay testimony of a witness unavailable for cross-examination may be admitted " 'if it bears adequate indicia of reliability.' " United States v. Bernard S., 795 F.2d 749, 753-54 (9th Cir.1986) (quoting Ohio v. Roberts, 448 U.S. 56, 66 (1980)).
 
 
 11
 Johnson argues that the trial court denied his Sixth Amendment right to confront hostile witnesses by admitting the prior testimony of Dr. Eugene Carpenter, a former deputy coroner for Los Angeles County.[1] Dr. Carpenter testified at Johnson's first trial on the basis of findings by Dr. Fremont Davis, the coroner who prepared Irvin's autopsy report.
 
 
 12
 Dr. Davis' report, which was admitted at each of Johnson's three trials, concluded that Irvin had died of "multiple stab wounds." It also suggested that Irvin's injuries might have been inflicted by two different knives. Before Johnson's first trial, however, Dr. Davis left his employment with the County. Dr. Carpenter testified as to his own opinions on the basis of the autopsy records. Dr. Carpenter asserted that the same weapon caused both wounds and that either wound alone would have proven fatal.
 
 
 13
 Dr. Carpenter died before Johnson's second trial. His testimony was read into the record, however, and the defense called its own expert to rebut Dr. Carpenter's conclusions.
 
 
 14
 Johnson objected to the admission of Dr. Carpenter's testimony at his third trial. The testimony was suspect, he argued, because Dr. Carpenter had never been cross-examined by competent counsel. Johnson, nonetheless, declined to call an expert of his own.
 
 
 15
 We have admitted even unexamined prior testimony in cases where the court deems the testimony reliable. See Bernard S., 795 F.2d at 753-54. There is nothing in the record to suggest that Dr. Carpenter was a biased or incompetent witness. Moreover, the record reflected the contrary opinions of Dr. Davis, and the court invited the defense to present new or prior testimony of other experts. In these circumstances, we conclude that the admission of Dr. Carpenter's prior testimony was proper.[2]
 
 
 16
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4. We therefore deny Johnson's request for oral argument
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Although Johnson did not make this argument in time for the government to respond, the district court, nonetheless, considered it
 
 
 [2]
 The prosecution bore no onus, as Johnson urges, to show that Dr. Davis was unavailable to testify. Dr. Davis' report advanced Johnson's case. Johnson, therefore, had no constitutional right to confront him. Moreover, there is nothing in the record to suggest that Dr. Davis was any less available to Johnson than he was to the prosecution. Johnson, therefore, has no right, as he claims, to an evidentiary hearing "to put Dr. Davis on the witness stand."